**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| LOUISE FERKETICH | : | CIVIL ACTION |
| | : | NO. 02-CV-3019 |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| CARNIVAL CRUISE LINES | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CARNIVAL CRUISE
LINES' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO TRANSFER
UNDER 28 U.S.C. 1631, 1404(a), AND/OR 1406(a)**

**I.      STATEMENT OF THE FACTS AND PROCEDURAL HISTORY**

Plaintiff Louise Ferketich is a resident of Bensalem, Pennsylvania (Complaint, paragraph

1).   She filed a Complaint against Defendant Carnival Cruise Lines on April 30, 2002, in the

Philadelphia Court of Common Pleas.  The Complaint asserts damages allegedly sustained by

Plaintiff while a paying passenger on a cruise aboard Defendant's vessel, the INSPIRATION, on

May 17, 2001, while the vessel was anchored in waters off the Cayman Islands.

The action was removed to this Court on May 21, 2002, on the basis of diversity

jurisdiction, pursuant to 28 U.S.C §1332.   This Court also maintains admiralty jurisdiction under

28 U.S.C. §1333, as the cause of action occurred on navigable waters.

Passengers have the option of either directly booking for their cruise, or booking through

an independent travel agent (Carnival does not contract with travel agents in Pennsylvania for

exclusive rights to make reservations for passengers aboard its vessels).  Affidavit of Lupe Seco,

Carnival Senior Claims Representative, Exhibit "A"[1].  In the instant case, Plaintiff booked

passage for her cruise on the INSPIRATION through Curran Travel Group, an independent travel

agent located in Blue Bell, Pennsylvania (*id*.).   The fare was transmitted from the Plaintiff's

travel agent to Carnival at its Miami headquarters.  On April 27, 2001, Carnival forwarded the

Passenger Ticket Contract booklet along with other items, including a "Welcome Aboard"

brochure, via First Class U.S. Mail to the Plaintiff's agent (*id*).  The ticket was distributed by

Plaintiff's travel agent to Plaintiff, who presented it at the time of boarding the INSPIRATION.

 As set forth in Exhibit "A", Carnival is a foreign corporation with its principal place of

business in Miami, Florida.  Carnival does not have any offices, general agent, or agent for

service of process located In Pennsylvania.  Carnival has no officer, director or employee living

or working in Pennsylvania, nor has any such person transacted any business in Pennsylvania

relating to the cruise at issue.  No shareholders' or directors' meetings have ever taken place in

Pennsylvania, and all significant corporate decisions are made in Carnival's corporate offices in

Miami, Florida.  Carnival has never at any material time been licensed to do business in the

Commonwealth of Pennsylvania and has not done business here.  Carnival does not pay any

business taxes or maintain any office, bank account or telephone number in Pennsylvania, nor

lease or own real estate here.  Morever, the cause of action did not arise in Pennsylvania, nor did

any transaction or occurrence which gives rise to the claims asserted take place in Pennsylvania.

Plaintiff's alleged cause of action arose during a cruise aboard Defendant's vessel while she was

located on the seas outside the territorial waters of Pennsylvania.

 The ticket contract is contained in a packet (samples of which are available to potential

---

[1] All exhibits and attachments are attached to the accompanying Memorandum of Law.

passengers at any time, upon request) which contains other items, such as luggage tags and a

brochure entitled "Welcome Aboard."  True and correct copies of the pertinent pages of

Carnival's "Welcome Aboard" brochure are attached as Exhibit "B".  In the Table of Contents at

page 4 of the brochure, the first item is entitled, "Things to Know Before Sailing."  One of these

"things" is the "Conditions of Contract".  The following statement is printed on page 8 of the

'Welcome Aboard" brochure under the heading "Conditions of Contract":

> If you look at the cover of your ticket booklet, you will see an "Important
> Notice to Guests."  This notice directs your attention to the terms and
> conditions of your contract.  It is important to read this and become
> acquainted with the specific conditions and limitations of your passage.

Attached as Exhibit "C" is a Specimen Passenger Ticket Contract booklet which is a true

and complete copy of that provided to Plaintiff for her May 2000 voyage.  This is a multi-page

blue booklet which, besides the Passenger Ticket Contract, contains information such as

itinerary, on-board credit information and application, and further "Important Reminders" that

again request passengers to "familiarize themselves with the specific conditions and liabilities in

the 'Terms and Conditions of Contract' as well as the policy under 'Cancellation and Refunds'"

(Exhibit "C").  The top, cover page of this booklet has the following heading in bold bright blue

capital letters: **IMPORTANT NOTICE TO GUESTS."**  Under that heading appears the

following text:

> THE GUEST TICKET CONTRACT IN THIS BOOKLET CONTAINS CONDITIONS
> ON NUMBERED PAGES 1 THROUGH 11 IN THE REAR PORTION OF THIS
> BOOKLET.  YOUR ATTENTION IS DIRECTED TO THESE CONDITIONS,
> CERTAIN OF WHICH CONTAIN IMPORTANT LIMITATIONS ON RIGHTS OF
> GUESTS TO ASSERT CLAIMS AGAINST THE CRUISE LINE, VESSEL OR THEIR
> AGENTS OR EMPLOYEES.  PLEASE READ THE CONTRACT AND THESE
> TERMS AND RETAIN THE CONTRACT FOR FUTURE REFERENCE.

On the face of the Contract itself (Exhibit "C") at page 1 of the cruise ticket-guest copy,

appears the following legend in bold capital letters:

### IMPORTANT NOTICE TO GUESTS

**THIS DOCUMENT IS A LEGALLY BINDING CONTRACT ISSUED BY CARNIVAL CRUISE LINES TO, AND ACCEPTED BY, GUEST SUBJECT TO THE IMPORTANT TERMS AND CONDITIONS APPEARING ON THE FOLLOWING 11 PAGES.  THE PROVISIONS ON THE FOLLOWING PAGES OF THIS CONTRACT ARE INCORPORATED AS THOUGH FULLY REWRITTEN ON THE FACE OF THIS CONTRACT.**

**NOTICE: THE ATTENTION OF GUEST IS ESPECIALLY DIRECTED TO CLAUSES 1 AND 15 THROUGH 20, WHICH CONTAIN IMPORTANT LIMITATIONS ON THE RIGHTS OF GUESTS TO ASSERT CLAIMS AGAINST CARNIVAL CRUISE LINES, THE VESSEL, THEIR AGENTS AND EMPLOYEES, AND OTHERS.**

The terms and conditions of the passenger contract appear on the Passage Contract at

pages 2 through 11.  These contract pages are retained by the passengers.  The pertinent portions

of the passenger ticket contract's terms and conditions provide in clear and unambiguous

language as follows:

1.(d)    This ticket is valid only for the person(s) named hereon as Guests and cannot be transferred or modified without Carnival's written consent.  It supersedes all prior contracts and representations, whether oral or written.  The acceptance or use of this ticket by the person(s) named hereon as Guests shall be deemed acceptance and agreement by each of them to all of the terms and conditions of this Passage Contract.

2.(d)    Guest acknowledges receipt of Carnival's applicable brochure and "Welcome Aboard" booklet.  Guest agrees to abide by the terms and conditions of Carnival's brochure and "Welcome Aboard" booklet.

18.    It is agreed by and between the Guest and Carnival that all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Guests's cruise, shall be litigated, if at all, in and before a court located in Miami-Dade County, Florida, U.S.A. to the exclusion of the Courts of any other county, state or country.

Passengers, including the Plaintiff, may not board a Carnival vessel without having in hand their Passenger Ticket Contract booklet, containing, *inter alia*, the passenger ticket contract (Exhibit "A").

## II.    LEGAL ARGUMENT

### A.    RELIEF REQUESTED

Defendant requests the Court to Dismiss Plaintiff's action because:

1.    Plaintiff Has Failed to Present Any Evidence, Nor Is There Any Evidence, That This Court Has Personal Jurisdiction Over Carnival;

2.    Plaintiff Has Failed to Present Any Evidence, Nor Is There Any Evidence, That Venue is Proper in this District under the Applicable Venue Statute, 28 U.S.C. §1391; and/or

3.    The Forum Selection Clause in the Passenger Ticket Contracts Is Valid And Enforceable And Requires That *All Disputes Whatsoever Shall Be Litigated, if at all, in and before a court located in Miami-Dade County, Florida, U.S.A. to the exclusion of the Courts of any other county, state or country.*

### B.    THE SUBSTANTIVE LAW APPLICABLE TO PLAINTIFF'S CLAIMS IS THE GENERAL MARITIME LAW OF THE UNITED STATES

_____ This Court has admiralty subject matter jurisdiction over this case since it involves alleged torts which occurred on navigable waters and has a nexus with traditional maritime activities.  Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 1973 A.M.C. 1 (1973); Sisson v. Ruby, 497 U.S. 358, 1990 A.M.C. 1801 (1990).  The concept of "traditional maritime activities" has been interpreted widely to include not only torts occurring on passenger cruise vessels (Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332 (11th Cir.  1984), cert. den.

470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed. 2d 379[2]; Keefe v. Bahama Cruise Lines, Inc., 867 F.2d

1318, 1320-21 (11th Cir. 1989)), but also to wrongs committed on private recreational vessel on

navigable waters.  Foremost Ins. Co. v. Richardson, 457 U.S. 668, 1982 A.M.C. (1982); Sisson

v. Ruby, *supra*.

Likewise, Plaintiff was a passenger aboard the INSPIRATION for an ocean voyage under

the terms of a passenger ticket contract with Carnival.  Such passenger ticket contracts for an

ocean voyage are maritime contracts, and actions arising from the voyage are subject to admiralty

law even though plaintiff filed her action in State Court.  The Moses Taylor, 71 U.S. (4 Wall.)

411, 427, 18 L.Ed. 397 (1886); Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625,

628, 79 S.Ct. 406, 408, 3 L.Ed. 2d. 550, 553 (1959); Hodes v. S.N.C. Achille Lauro Ed. Altri-

Gestione, 858 F.2d 905, 909 (3rd Cir. 1988), cert denied, 490 U.S. 1001. ("when a common law

action is brought, whether in state or federal court, to enforce a cause of action cognizable in

admiralty, the substantive law to be applied is . . . the general maritime law");  Keefe v. Bahama

Cruise Lines, Inc., *supra*.[3]

---

[2]  Wherein the Court stated:  "Plaintiffs alleged diversity of citizenship as the jurisdictional basis of this suit.  Since the complained of injury occurred upon a ship in navigable waters, admiralty jurisdiction is also  present and maritime law governs the outcome of the suit. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S. Ct. 406, 408, 3 L. Ed. 2d 550 (1959)."  741 F.2d 1332, 1333.

[3]It is to be noted that the "Savings to Suitors Clause", 28 U.S.C. sect. 1333(1) allows Plaintiff's to bring their admiralty claim in state court.  However, as early as 1918 the U.S. Supreme Court held that this clause does not mean that defendant's liability should be measured by state common law instead of maritime law standards, but that state courts are bound to apply federal admiralty law where admiralty law controls (i.e., where the injury occurs on navigable waters and has a relationship to traditional maritime activity).  Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249 (1973)): Chelentis v. Luckenbach S.S. Co., 247 U.S. 372, 38 S.Ct. 501 (1918); Southern Pacific Ry. Co. v. Jensen, 244 U.S. 205 (1917).  Thus, all courts will

**C.    PLAINTIFF HAS FAILED TO PRESENT ANY EVIDENCE, NOR IS THERE ANY EVIDENCE, THAT THIS COURT HAS PERSONAL JURISDICTION OVER CARNIVAL**

Attached as Exhibit "A" is a seven page supporting affidavit executed by Carnival's Senior Claims Representative, Lupe Seco.  This Affidavit sets forth more than sufficient facts to establish that Plaintiff's Complaint must be dismissed for lack of personal jurisdiction and lack of venue.

When a defendant raises the defense of lack of personal jurisdiction, the plaintiff bears the burden of producing sufficient facts to establish that jurisdiction is proper.  Mellon Bank (East) PSFS, Nat'l Assoc. v. Farino, 960 F.2d 1217, 1223 (3rd Cir. 1992).  To establish the propriety of jurisdiction, the plaintiff must present a *prima facie* case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state.  *Id*., at 1223, citing Provident Nat'l Bank v. California Fed. Sav. & Loan Assoc., 819 F.2d 434, 437 (3rd Cir. 1987).

The question of whether this Court may exercise personal jurisdiction over a non-resident such as Defendant is to be tested against Pennsylvania's Long Arm Statute (42 Pa. C.S.A. Section 5322), which scope is coextensive with the due process clause of the U.S. Constitution. Mellon Bank (East) PSFS, National Association v. Farino, *supra*; Remick v. Manfredy, 238 F.3d

---

apply their own procedural rules, but if the matter is otherwise cognizable by Admiralty, the state court (or federal court even if only diversity jurisdiction has been asserted) *must apply the federal maritime substantive law,* whether or not admiralty jurisdiction has been asserted.  Jensen, *supra*. See also: Carlisle Packing Co. v. Sandanger, 259 U.S. 255 (1922); Preston v. Frantz, 11 F. 3d 357 (2nd Cir. 1994); Carey v. Bahama Cruise Lines, 864 F.2d 201 (1st Cir. 1988); Hodes v. S.N.C. Achille Lauro, 858 F.2d 905, 1988 A.M.C. 2829 (3rd Cir. 1988), cert. den. 490 U.S. 1001; Scudero v. Todd Shipyards Corp., 385 P.2d 551, 1964 A.M.C. 403 (1963); Van Deursen v. Dunlap Towing Co., 562 P.2d 666, 1977 A.M.C. 870 (1977).

248 (3rd Cir. 2001); <u>Friedman v. Israel Labor Party</u>, 957 F. Supp. 701 (E.D. Pa. 1997); <u>Kubik v. Letteri</u>, 614 A. 2d 1110, 532 Pa. 10 (Pa. 1992).  Thus, it is Plaintiff's burden to demonstrate that Defendant's business activities in Pennsylvania are "so continuous and substantial as to make it reasonable for the state to exercise such jurisdiction.".  <u>Bork v. Mills</u>, 458 Pa. 228, 231-2, 329 A. 2d 247 (1974); <u>Empire Kosher Poultry, Inc. v. Hebrew National Kosher Foods</u>, 555 F. Supp 917 (D.C. Pa. 1983).

Plaintiff has failed to sustain her burden of proof.  First, Plaintiff cannot controvert  the jurisdictional facts contained in the Carnival Affidavit.  Second, based on the facts before the Court, it is proper to conclude that there are insufficient contacts to permit the maintenance of personal jurisdiction or venue over Carnival.  <u>See</u> <u>Lacovra v. Merril Lynch, Pierce, Fenner and Smith, Inc.</u>, 551 F.Supp. 602, 603 (E.D. Pa. 1982); <u>Peek v. Golden Nugget Hotel and Casino</u>, 806 F.Supp 555, 557-558 (E.D. Pa. 1992)(dismissal for lack of personal jurisdiction based on defendants' un-controverted affidavits); <u>Slota v. Moorings, Ltd.</u>, 343 Pa. Super. 96, 494 A.2d 1, 2-3 (1985)(sustaining dismissal for lack of personal jurisdiction based on uncontroverted facts contained in defendant's affidavit).  The reasons for this conclusion are as follows:

### 1.    The Requirements of Constitutional Due Process Do Not Allow This Court To Exercise Personal Jurisdiction Over Carnival

Fed. R. Civ. P. 4(e) authorizes a federal district court to exercise personal jurisdiction over non-resident defendants like Carnival, to the extent authorized by the law of that state.  <u>Mellon Bank</u>, *supra*, at 1221; *accord*, <u>North Penn Gas v. Corning Natural Gas</u>, 897 F.2d 687, 689 (3rd Cir.) (per curiam), cert. den., 498 U.S. 847, 111 S. Ct. 133, 112 L.Ed. 2d 101 (1990).  The reach of state law, of course, must not extend beyond what Due Process allows.  <u>Van</u>

Buskirk v. Carey Canadian Mines Ltd., 760 F.2d 481, 489-490 (3rd Cir. 1985); Mellon Bank, *supra*; Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3rd Cir. 1984); Kubik v. Letteri, *supra*; Slota, *supra*.

There are only two ways in which Plaintiff can carry the burden of demonstrating sufficient contacts between the forum and Carnival.  The first, known as "specific jurisdiction," would apply if Plaintiff's claims were related to or arose out of Carnival's specific activities within the forum.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-474 (1985); Gavigan v. Walt Disney World, Inc. 646 F.Supp. 786, 787 (E.D. Pa. 1986).  The second, "general jurisdiction", would apply if Carnival maintained "continuous and substantial" contacts with the forum.  Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408 (1984); Slota, *supra,* 494 A.2d at 4-6.

### a.    There is No Specific Jurisdiction Over Carnival

In order to satisfy the requirements of specific jurisdiction, two prongs must be met: A defendant must have purposefully availed itself of acting within the forum state thus invoking the benefits and protection of its laws *and* the cause of action must arise from the Defendant's activities within the forum state to make the exercise of jurisdiction reasonable.  Mellon Bank, *supra*, at 1221; Slota, 494 A.2d at 3-4; Dollars Savings Bank v. First Security Bank of Utah, 746 F.2d 208, 211 (3rd Cir. 1984).  Plaintiff's claims have no relation to the Commonwealth of Pennsylvania.  Plaintiff's claims are not the result of anything Carnival did in the Commonwealth of Pennsylvania.  Carnival does not even maintain an office or a place of business in Pennsylvania.  Plaintiff's causes of action alleges connections solely with Carnival's activities on a vessel outside the territorial waters of Pennsylvania that did not enter the jurisdiction of

Pennsylvania and in fact which never enters the jurisdiction of Pennsylvania. In situations such as this, the law is clear:

> When a plaintiff brings an action for . . . injuries suffered in another state . . . courts have concluded that the cause of action does not arise from the defendant's forum contacts for the purposes of asserting [specific] personal jurisdiction.[4]

In short, in this case the facts are undisputed that Plaintiff's alleged injuries did not arise from any contact of Carnival with the forum, and the Court cannot exercise specific jurisdiction over Carnival. see: Bork v. Mills, *supra*;

### b.    There is No General Jurisdiction Over Carnival

Since the alleged deficiencies in the cruise are not related to any activities in Pennsylvania by Carnival, this Court can exercise personal jurisdiction over Carnival only if "general jurisdiction" can be established. To establish general jurisdiction, the plaintiffs must prove that Carnival maintained "continuous and substantial" forum affiliations. Helicopteros Nacionales de Colombia S.A. v. Hall, *supra*, 466 U.S. 408, 414, nn. 8-9, 416, 104 S.Ct. 1868, 1872 (1984); Slota, *supra*, 494 A.2d at 4-6; Gehling v. St. Georges School of Medicine, Ltd., 773 F.2d 539 (3rd Cir. 1985). General jurisdiction requires that the plaintiffs prove greater contacts between Carnival and the forum than those "minimum contacts" required to establish specific jurisdiction. Reliance Steel Products v. Watson Ess Marshall & Enggas, 675 F.2d 587, 588-89

---

    [4] Peek v. Golden Nugget Hotel & Casino, 806 F.Supp. 555, 558 (E.D. Pa. 1992). See also: Slota, 494 A.2d at 4; Gavigan v. Walt Disney World, Inc., 646 F.Supp. 786, 787 (E.D. Pa. 1986); see also, Pearrow v. Nat. Life & Accident Insur. Co., 703 F.2d 1067, 1069 (8th Cir. 1983)("Pearrow's cause of action is for negligence and it cannot be said [it] . . . arose out of the solicitation in [the forum]); Kauffman v. Ocean Spirit Shipping, 1993 A.M.C. 179, 180 (W.D. Mich 1990); Lane v. Vacation Charters, Ltd., 750 F.Supp. 120, 127 (S.D.N.Y. 1990).

(3rd Cir. 1982); <u>Peek v. Golden Nugget Hotel & Casino</u>, 806 F.Supp 555, 557 (E.D. Pa. 1992).[5]

It is Plaintiff's burden to adduce "extensive and persuasive" facts indicating that Carnival has

maintained continuous and substantial forum affiliations. <u>Reliance Steel Prod. v. Watson, Ess,</u>

<u>Marshall, & Enggas</u>, 675 F.2d 587, 588-589 (3rd Cir. 1982).

Here, Carnival's contacts with Pennsylvania are more appropriately characterized as non-

existent rather than continuous and substantial.

> **(i)      Carnival Does Not Do Business In Pennsylvania And its Contacts
> With Pennsylvania are De Minimus**

Carnival has little or no contacts with the Commonwealth of Pennsylvania.  As stated in

the Seco Affidavit (Exhibit "A"), Carnival is a Panamanian corporation with its principal place

of business located in Miami, Florida.  Carnival has no office in Pennsylvania or elsewhere in the

United States (*id*.).    Carnival does not own, nor has it ever owned or leased any real estate in

Pennsylvania. (*id*.).  At all times material hereto, Carnival owned and/or operated cruise ships out

of Florida, California, and Puerto Rico.  Carnival has never operated any cruise vessel out of

Pennsylvania.  (*id*.).  No officer, director, or employee of Carnival transacted any business in

Pennsylvania related to the cruise on which plaintiff and defendants were booked (*id*.).  No

officer or corporate director of Carnival lives or works in the Commonwealth of Pennsylvania

(*id*.).  Carnival has never had a shareholders' or directors' meeting in Pennsylvania, and all

significant corporate decisions are made in Carnival's corporate offices in Miami (*id*.).

---

[5]In <u>Peek</u>, 806 F.Supp. 555, 558 (E.D. Pa. 1992), the Court refused to characterize contacts as continuous and substantial, since the defendant, "did not own any property, pay any taxes, operate any offices, incorporate, or lease any space in Pennsylvania.  Further, there [had] been no evidence tending to show that the defendants consciously targeted the Pennsylvania consumer or advertised in the Pennsylvania print, radio or television media."

Carnival has never at any material time been licensed to do business in Pennsylvania, and has not done business in Pennsylvania (*id*.). Carnival does not have a general agent or an agent for service of process in Pennsylvania (*id*.). Carnival does not pay any business taxes or maintain any office, bank account or telephone number in Pennsylvania (*id*.).

Passengers have the option of either directly booking for their cruise, or booking through an independent travel agent (Carnival does not contract with travel agents in Pennsylvania for exclusive rights to make reservations for passengers aboard its vessels). Exhibit "A". In the instant case, Plaintiff booked passage for her cruise on through Curran Travel Group, an independent travel agent. The fare was transmitted from Curran to Carnival in Miami, and on April 27, 2000, Plaintiff's Passenger Ticket Contract booklet was forwarded along with other items, including a "Welcome Aboard" brochure, via First Class U.S. Mail to Plaintiff's travel agent (*Id.*).

Any argument by Plaintiff that the Court has jurisdiction over Carnival simply because Plaintiff lives in Pennsylvania lacks foundation since, "[i]t is [Carnival's] contacts with the forum that [can] confer jurisdiction over [it], and not the mere unilateral activity of those that claim some relationship with [Carnival]." Slota, 494 A.2d at 4; see also: Insurance Data Processing, Inc. v, Old Charleston Ins. Co., Ltd., 1989 U.S. Dist. LEXIS 15585, 1989 WL 157138 (E.D. Pa. Dec. 28, 1989); Metallic Ceramic Coatings, Inc. v. Precision Products, Inc., 2001 U.S. Dist. LEXIS 1224 (E.D. Pa., February 12, 2001)[6]. Plaintiff's unilateral activity of living in Pennsylvania constitute *Plaintiffs'* jurisdictional contacts with the forum - not Carnival's.

---

[6] Copies of these decisions and all decisions cited in this Memorandum which are published only in non-West sources are attached as Exhibit "D".

Similarly, Plaintiff's reservations were made with Carnival in Miami. The passenger ticket contract was printed and issued out of Carnival's Miami headquarters. Thus, all transactions related to the cause of action took place outside Pennsylvania.

Importantly, in Villani v. Carnival Cruise Lines, Inc., 1996 AMC 1996 (W.D. Pa 1996) and Partesi v. Carnival Cruise Lines, Inc., 1991 AMC 1401 (D.N.J. 1990), the District Courts for the Western District of Pennsylvania and for New Jersey, respectively, reviewed nearly identical facts and held that Carnival did not have sufficient contacts with the forum for the Court to exercise personal jurisdiction or venue over it. In Villani, after the Court reviewed the contacts with Pennsylvania (which are precisely the same as those in this case, see Villani, 1996 A.M.C. at 1998-2001), it concluded:

> In situations as here, where a defendant has no office and no officers in the forum and pays no taxes there, and where its contacts are limited to a national advertising campaign and informational brochures sent to travel agents, its contacts cannot be characterized as "continuous and substantial". Vacca v. Walt Disney World Company, No. 91-4110, 1992 WL 5181, at *2 (D.N.J. Jan. 6, 1992); also see Peek v. Golden Nugget Hotel, supra, 806 F. Supp. at 559; and Giangola v. Walt Disney World Co., 753 F. Supp. 148, 155-56 (D.N.J. 1990). In addition, an out-of state carrier's sale of tickets through a travel agent located in the forum is not by itself sufficient to establish general personal jurisdiction over the carrier. Romero v. Argentinas, 834 F. Supp. 673, 681 (D.N.J. 1993).

> Based on the foregoing, we cannot say that Carnival's forum activities are "continuous and substantial". As such, the Court lacks personal jurisdiction over it, and venue in this district is improper...

1996 AMC at pp.2001-2002.

> **(ii)    Carnival Does Not Advertise in Pennsylvania and Mere Advertising Does Not Constitute Sufficient Contact With a Forum To Permit the Exercise of General Jurisdiction or Venue**

Like most cruise lines based in Florida, Carnival engages in nationwide advertising. One of the independent advertising agencies utilized by Carnival contracts with the three national

television networks, as well as cable television networks, to broadcast Carnival commercials on selected dates (Exhibit "A").  These generic commercials are shown in the same time slot nationwide, and are not directed to any particular geographic area (*id.*).  Another of the independent advertising agency used by Carnival purchases newspaper advertising in nearly two hundred (200) geographic markets *(id.*).  Except for certain pricing differences, the same basic advertisement is placed in newspapers nationwide (*id.*).

Neither Carnival nor any independent advertising agencies contract with local television stations or network affiliates to broadcast Carnival commercials (*id.*).  None of the advertising agencies which place Carnival's commercials are located in the Commonwealth of Pennsylvania (*id.*).  Carnival engages in cooperative advertising with travel agents in the tri-state area and in many other states (*id.*).  This arrangement allows travel agencies to place the agency's name, address, or other localized information pertaining to the agency on a Carnival advertisement in exchange for sharing the advertising costs (*id.*).

While Carnival markets its cruises by sending sales representatives to many different states, including Pennsylvania, where they make promotional calls on independent travel agents, these sales representatives do not deal with the general public (*id.*).  They do not maintain offices, bank accounts, or telephone numbers in Pennsylvania on behalf of Carnival (*id.*).  The case law within the Third Circuit is firm that such advertising and promotions within the Commonwealth cannot constitute the pervasive continuous and substantial forum affiliations necessary to sustain jurisdiction. Scheidt v. Young, 389 F.2d 58, 60 (3rd Cir. 1968; Giangola v. Walt Disney World Co., 753 F.Supp. 148 (D.N.J. 1990); Poteau v. Walt Disney World Company, 1999 U.S. Dist LEXIS 12459 (E.D. Pa. 1999); Cunningham v. Walt Disney World

Company, 1991 U.S. Dist. LEXIS 1967 (E.D. Pa. 1991); Romero v. Utrecht, 1998 U.S. Dist.

LEXIS 19997 (E.D. Pa. 1998); Metallic Ceramic Coatings, Inc., *supra*.

 The facts in this case are distinguishable from those which have been found sufficient to

exercise jurisdiction over a non-resident corporation.  In Gavigan v. Walt Disney World Co., 630

F. Supp. 148 (E.D. Pa. 1986), reconsid. denied, 646 F. Supp. 786 (E.D. Pa. 1986), Pennsylvania

plaintiffs sought recovery for personal injuries sustained while on vacation at Walt Disney World

in Florida.  Disney contested jurisdiction, but sufficient contacts were deemed to exist for several

reasons.  First, the defendant Disney World failed to aver that Disney World advertising

conducted in Pennsylvania was done by "licensees or by some other unrelated entity," and in fact

the advertising was being done by its own parent corporation.  *Id*. at 151, 152.  Second, Disney

World *itself* engaged in an extensive promotional campaigns in Pennsylvania which included

sending Mickey Mouse to Philadelphia to bestow honorary citizenship on Mayor Goode, and

hosting city representatives at Disney World in Florida at the defendant's expense.  Third, Disney

World *itself* entered into promotional campaigns with Philadelphia businesses including the

Adams Mark Hotel, and a John Wanamaker store where it maintained a booth inside the store to

distribute information *directly to the public* regarding its amusement park in Florida.  *Id.*, at 788.

Further, the activities of a sister company of the defendant, Walt Disney Travel Company, were

"geared towards enticing Pennsylvania citizens to the Disney World complex."  *Id*., at 789.

Based on the defendant's own activities in the forum, the Gavigan Court found that the Disney

World advertising discussed above was "directed specifically toward the Philadelphia Market,"

and that Disney was subject to the jurisdiction of the Court.  *Id*., at  700.

 In contrast, the facts before this Court indicate that neither Carnival nor any Carnival

affiliate has engaged in advertising or promotional campaigns in Pennsylvania, nor does Carnival

or any Carnival affiliate retain any advertising agency located in Pennsylvania, nor has Carnival

or any Carnival affiliate distributed information directly to the public regarding Carnival Cruises.

(see Exhibit "A").

Further, it has been held that even where a company engages in advertising which was

aimed at the specific geographic market in which the plaintiffs reside, jurisdiction does not exist

on those facts alone because:

> an advertisement seeking business in another state does not alone
> provide minimum contacts with [the] state of publication.

Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.8 (3rd Cir. 1984) citing,

Reliance Steel, 675 F.2d 587 (3rd Cir. 1982); see also:  Purcell v. Bryn Mawr Hospital, 579 A.2d

1282, 1287 (Pa. 1990)(neither advertising in Philadelphia phone books and newspapers nor mere

solicitation of business in a particular county constitutes "regularly conducting business" for

purposes of venue); accord, Battuello v. Camelback Ski Corp., 409 Pa. Super. 642, 598 A.2d

1027, 1028-1030 (1991).[7]  Likewise, in both the Villani and Partesi cases which involve the same

defendant and the very same facts on this issue, the respective Federal District Courts held that

Carnival's method of national advertising is not sufficient to establish personal jurisdiction or

venue over Carnival.  Villani, 1996 AMC at p. 2001-2002; Partesi, 1991 AMC , at p. 1405.

Similarly, the fact that a defendant's own television advertising broadcasts to an area

---

[7] Similarly, courts have uniformly held that internet sites that advertise products and provide a toll-free number for placing orders are insufficient to create general jurisdiction.  S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc., 79 F. Supp. 2d 537, 542-43 (E.D. Pa.1999); Desktop Tech. Inc. v. Colorworks Reproduction & Design, Inc., 1999 U.S. Dist. LEXIS 1934 (E.D. Pa. 1999); Blackburn v. Walker Oriental Rug Galleries, Inc. 999 F. Supp. 636, 638 (E.D. Pa. 1999).

including Pennsylvania and New Jersey as well as Delaware

> [does] not establish that [the] defendant targeted the "market" in
> Pennsylvania rather than New Jersey, or [make] it foreseeable that
> he could be haled into court in Pennsylvania.

Garofalo v. Praiss, 1990 U.S. Dist. LEXIS 8544; 1990 WESTLAW 97800 (E.D. Pa. 1990).

Plaintiff's claims arise from Carnival's activities outside of Pennsylvania. Plaintiff has failed to prove the existence of, nor does there exist evidence of, contacts with Pennsylvania sufficient to sustain jurisdiction or venue over Carnival. Therefore, Plaintiff's Complaint against Carnival must be dismissed for lack of personal jurisdiction.

### D.    VENUE IS IMPROPER IN THIS FORUM

### 1.    Improper Venue under 28 U.S.C. §1391(b)

The federal venue statute found at 28 U.S.C. 1391(b) applies to this action, since while the instant action was removed to this Court based upon diversity, the Court also has jurisdiction under 28 U.S.C. §1333. Villani v. Carnival Cruise Lines, Inc. 1996 A.M.C. 1996 (W.D. Pa. 1996). 28 U.S.C. 1391(b) provides that a civil action not founded solely on diversity may be brought only in: (1) the district where the defendant resides; (2) the district where "a substantial part of the events or omissions giving rise to the claim occurred", or (3) the district in which Carnival may be found, if there is no district in which the action may otherwise be brought.

The first option does not apply since 29 U.S.C. §1391(c) provides that corporations are deemed to reside where they are subject to personal jurisdiction, and, as demonstrated above, this clearly is not in Pennsylvania, but only in the Southern District of Florida.

With regard to the second option, the Third Circuit has held that "[t]he test for determining the propriety of a plaintiff's choice of venue is not the defendant's "contacts" with a

particular district, but rather the location of those "events or omissions" that give rise to the claim." Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3rd Cir. 1994); Metallic Ceramic Coatings, Inc. v. Precision Products, Inc., *supra*, at 11. "Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." Cottman, at p. 294.

In this case, there is no allegation that a "substantial part of the events or omissions giving rise to the claim occurred" in Pennsylvania. On the contrary, the "events or omissions" occurred solely aboard Defendant's vessel in the waters off the Cayman Islands, far outside of the territorial waters of Pennsylvania. Furthermore, the Courts in the Third Circuit have held that where the contacts for purposes of personal jurisdiction are lacking there, venue normally is improper. Villani v. Carnival Cruise Lines, Inc., 1996 A.M.C. 1996 (W.D. Pa. 1996); Metallic Ceramic Coatings, Inc., *supra*. In *Villani*, which involved the same defendant and facts which are on all fours with the instant case, the District Court concluded:

> ...[W]e cannot say that Carnival's forum activities are "continous and substantial". As such, the Court lacks personal jurisdiction over it, and venue in this district is improper.

1996 A.M.C. at 2002.

Finally, the third option of §1391(b) does not apply to this case, since there clearly is a "district where the action may otherwise be brought", namely, the Southern District of Florida, Miami Division, since this is where Carnival's principal offices are located, and, as evidenced by Exhibit A, Carnival is subject to personal jurisdiction there.

**2.      The Forum Selection Clause in Plaintiffs' Passenger Ticket Contract is Valid and Enforceable and Requires that all Disputes Whatsoever Shall be Litigated in a Court in Florida**

As evidenced by the Affidavit of Lupe Seco, Carnival Senior Claims Representative, Plaintiff received her Passenger Ticket Contract booklet prior to boarding the INSPIRATION, since they were mailed from Carnival's offices in Miami and forwarded by Carnival to Plaintiff via First Class U.S. Mail on April 27, 2001 *(*Exhibit "A," paragraph 16), and further since it is impossible to board without them (Exhibit "A", paragraph 26).  Plaintiff's Passenger Ticket Contract clearly and unambiguously required them to litigate, if at all, in Florida.  The passenger ticket contract states:

> 1.(d)    This ticket is valid only for the person(s) named hereon as Guests and cannot be transferred or modified without Carnival's written consent.  It supersedes all prior contracts and representations, whether oral or written.  The acceptance or use of this ticket by the person(s) named hereon as Guests shall be deemed acceptance and agreement by each of them to all of the terms and conditions of this Passage Contract.

> 2.(d)    Guest acknowledges receipt of Carnival's applicable brochure and "Welcome Aboard" booklet.  Guest agrees to abide by the terms and conditions of Carnival's brochure and "Welcome Aboard" booklet.

> 18.    It is agreed by and between the Guest and Carnival that all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Guests's Cruise, shall be litigated, if at all, in and before a court located in Miami-Dade County, Florida, U.S.A. to the exclusion of the Courts of any other county, state or country.

(Exhibit "C").

Since this is a case in admiralty, federal admiralty law governs the enforceability of the forum selection clause at issue.  Carnival Cruise Lines v. Shute, 499 U.S. 585, 590, 111 S.Ct. 1522, 1525, 113 L.Ed.2d 622 (1991); Hodes v. S. N. Achille Lauro Ed. Altri-Gestione G., 1988 AMC 2829, 2834, 858 F. 2d 905, 909 (3rd Cir. 1988).

Plaintiff cannot contend that the plain meaning of the forum selection clause at issue is not broad enough to encompass all her claims against Carnival. Carnival Cruise Lines v. Shute, supra (analyzing the same forum selection clause and notice provisions and finding them to have been reasonably communicated to the plaintiff and rejecting argument that not freely bargained for); Coastal Steel v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 203 (3rd Cir. 1983)(forum selection clause applies to all claims arising out of the contract whether they are contract based or tort based); Crescent Intern., Inc.v. Avatar Communities, Inc., 857 F.2d 943, 944-45 (3rd Cir. 1988)(rejecting plaintiff's narrow construction, and noting that the law favors forum selection clauses and will not allow them to be defeated by pleading alternative theories of tort and contract); Anselmo v. Univision Station Group, 1993 U.S. Dist. LEXIS 428 at p.6 (S.D.N.Y. 1993).

The forum selection clause at issue is presumptively valid. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9, 10, 92 S.Ct. 1907, 1913 32 L.Ed.2d 513 (1972); Nova Ribbon Products, Inc. v. Lincoln Ribbon, Inc., 1992 U.S. Dist. LEXIS 13123 at p. 15 (E.D. Pa. 1992)(noting Pa. Supreme Court adopted the same presumption in 1965).

Plaintiff and/or her agent received her ticket prior to the scheduled sailing of the vessel (Exhibit "A"). The Maritime Law on point, beginning with the U.S. Supreme Court decision of Carnival Cruise Lines, Inc. v. Shute, has held that in circumstances involving a forum selection clause and notice provisions such as those contained in Plaintiff's ticket and brochure, the terms and conditions contained in the contract are "reasonably communicated" to the passenger and the forum selection clause is valid and enforceable. Carnival Cruise Lines, Inc. v. Shute, supra., (construing an identical provision); Hodes v. S.N. Achille Lauro Ed. Altri-Gestione G., supra;

Partesi v. Carnival Cruise Lines, Inc., *supra*, 1991 AMC 1401, 1403, 1406; Hicks v. Carnival Cruise Lines, Inc., 1995 AMC 281 (E.D. Pa. 1994); Villani v. Carnival Cruise Lines, Inc., *supra*; Tone v. Carnival Cruise Lines, Inc., E.D. Pa., No. 93-374, Oct. 18, 1993; Urich v. Carnival Cruise Lines, Allegheny County Court of Common Pleas, No. GD 98-15140 (March 31, 1999). See also: Gomez v. Royal Caribbean Cruise Lines, 1997 AMC 2159, 964 F. Supp. 47 (D.P.R. 1997); Colby v. Norwegian Cruise, 1996 AMC 1752, 921 F. Supp. 86 (D.C. Ct. 1996); Osborn v. Princess Tours, Inc., 1995 AMC 2119 (S.D. Tx. 1995), after transfer, 1996 AMC 1481 (C.D. Ca. 1996); Moraites v. Royal Caribbean Cruises, Ltd., 1995 AMC 348 (N.D. Ill. 1994); Enderson v. Carnival Cruise lines, 2001 U.S. Dist. LEXIS 1608 (W.D., N.D., Statesville Div. 2001).

In Shute, the U.S. Supreme Court cited four reasons why it is reasonable to enforce against a Washington state resident the same forum selection clause which is at issue in the instant case:

1. A cruise line has a special interest in limiting the fora in which it potentially could be subject to suit . . . [b]ecause [it] . . . carries passengers from many locales;

2. [A forum selection clause] has the salutary effect of dispelling any confusion about where suits . . . must be brought and defended, *sparing litigants the time and expense of pretrial motions to determine the correct forum, and conserving judicial resources;*

3. It stands to reason that passengers who purchase tickets containing a forum clause . . . benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued; and

4. Florida is not a remote alien forum, given the fact that [plaintiff's] accident occurred off the coast of [a foreign country] this dispute [is not] an essentially local one inherently more suited to resolution

in [plaintiff's home state].

Shute, 494 U.S. at 593-594; 111 S.Ct. at 1527-28; accord, Hodes, 858 F.2d at 912-916 (not unreasonable for New Jersey residents to litigate in Italy as required by the forum selection clause in their passenger ticket contract).

The cases cited above involving Carnival Cruise Lines, including the United States Supreme Court case of Carnival Cruise Lines, Inc. v. Shute , construed the *very same clause* as that contained in Plaintiff's Passenger Ticket and held it to be enforceable. See also: Grivesman v. Carnival Cruise Lines, 2001 U.S. Dist. LEXIS 661 (N.D. Il. 2001), vacated and transferred in 2001 U.S. Dist. LEXIS 5257 (N.D. Il. 2001); Perez v. Carnival Cruise Lines, 993 F. Supp. 39 (D. P.R. 1998); Launey v. Carnival Cruise Lines, Inc., 1998 A.M.C. 579 (E.D. La. 1997); Padel v. Carnival Corporation, 1997 U.S. Dist. LEXIS 18894 (E.D. La. 1997); Pierce v. Carnival Cruise Lines, 1996 U.S. Dist. LEXIS 3881 (E.D. La. 1996); Igneri v. Carnival Corp., 1996 U.S. Dist. LEXIS 22484 (E.D. NY 1996); Cooper v. Carnival Cruise Lines, 1992 A.M.C. 2852 (S.D. NY 1992). Furthermore, the Supreme Court in Shute has held that the forum selection clause is enforceable even though it is not specifically bargained for between the parties. Carnival Cruise Lines v. Shute, *supra*, 499 U.S. 585, 593, 1991 AMC 1697, 1702. See also Osborn v. Princess Tours, Inc., *supra*, 1995 AMC 2119, 2121.

In upholding the forum selection clause, the Courts have concluded that such terms in the Passage Contract become binding when the passenger receives the ticket. Hicks v. Carnival Cruise Lines, Inc. 1995 A.M.C. 281 (E.D. Pa. 1994); Foster v. Cunard Lines, 121 F.2d 12 (2nd Cir. 1941); Lemoine v. Carnival Cruise Lines, Inc., 854 F. Supp. 447, 448 (E.D. La. 1994); Osborn v. Princess Tours, Inc., *supra*, 1995 AMC 2119, 2120; De Carlo v. Italian Lines, 416 F.

Supp. 1136 (S.D.N.Y 1976).   Indeed, the Courts have pointed to the "Important Notice to

Passengers" provision on the face of Plaintiff's Passage Ticket which references, *inter alia*, the

forum selection clause, and held that this imputes knowledge of the forum selection clause to

passengers even though they never read the contract. Ciliberto v. Carnival Cruise Lines, Inc.,

1986 AMC 2317 (E.D. Pa. 1986); Gomez v. Royal Caribbean Cruise Lines, *supra*, 1997 AMC

2159, 2163; Coleman  v. Norwegian Cruise Lines, 1991 AMC 1994, 1911, 753 F. Supp. 1490,

1495 (W.D. Mo. 1991) (citing Barbachym v. Costa Line, Inc.,  713 F.2nd 216, 220 (6th Cir.

1983);  Cooper v. Carnival Cruise Lines, supra, 1992 A.M.C. at 2855.  A passenger has a

contractual duty to read the ticket provisions. *Id.*  A passenger who chooses not to read assumes

the risk of such omission.  Derro v. American Airlines, Inc., 816 F.2d 1360, 1365 (9th Cir. 1987);

Osborn v. Princess Tours, Inc., *supra,* 1995 AMC 2119, 2121; Marek v. Marpan Two, 817 F.2d

242, 247 (3d Cir. 1987); Foster v. Cunard, 121 F.2d 12, 13 (2d Cir. 1941) (plaintiff had notice

although brother procured and held ticket); DeCarlo v. Italian Line, *supra* at 1137 (plaintiff had

notice although plaintiff's friend arranged for and held ticket and plaintiff never saw ticket);

Ciliberto v. Carnival, *supra*, (plaintiff had notice although co-worker not well known to plaintiff

procured and held ticket).

   Plaintiff has disregarded the terms of the terms of the Passenger Ticket Contract (and the

multiple notice provisions in the brochures and ticket booklet, Exhibits "B" and "C") by filing

suit in the Commonwealth of Pennsylvania rather than the State of Florida, as required by the

terms of the Passenger Ticket and upheld uniformly by Maritime Law.  The U.S. Supreme Court

and other courts addressing precisely the same clause in the same circumstances have

consistently held that Plaintiff's action in Pennsylvania is barred and Plaintiff must pursue her

claim, if at all, in the State of Florida.  Not only is this the uncontradicted law, but it makes sense

from a practical point of view, since all documents, records, or other evidence relevant to these

matters would only be found in Florida where Carnival maintains its principal place of business.

### G.   ALTERNATIVE MOTION TO TRANSFER

Although dismissal is warranted under the facts and law, this Court has the discretion to

refrain from dismissing the action and to instead transfer it to the district where it could have

been brought, pursuant to 28 U.S.C. §1631, 1404(a) and/or 1406(a), should it determine that it is

in the interest of justice to do so.  Based upon the foregoing, it is clear that the only proper

district for the filing of this action is the Southern District of Florida, Miami Division.  As such,

Defendant alternatively requests that the Court transfer this action to that district, if the Court is

of the opinion that justice so requires.

### III.   <u>CONCLUSION</u>

Plaintiff has failed to present any evidence, nor is there any evidence, that Carnival has

sufficient contacts with the forum such that it should have expected to be haled into a

Pennsylvania Court.  Thus, Plaintiff's claims must be dismissed for lack of personal jurisdiction.

Furthermore, venue is improper both under the provisions of 28 U.S.C. 1391(b), and

because under the un-controverted maritime law, the Plaintiff is bound by the terms of the forum

selection clause in the passenger ticket contract to litigate all disputes and matters whatsoever

arising under, in connection with, or incident to the passenger ticket contract in Florida.  The

Supreme Court, and all court's thereafter, have consistently ruled that the very same forum

selection clause at issue in this case is valid and enforceable.  Therefore, Plaintiff's Complaint

ought to be dismissed, and Plaintiff must pursue her claims in Florida.

For the reasons set forth above, Defendant, Carnival Cruise Lines, requests that this Honorable Court grant its Motion to Dismiss, or in the alternative, that it transfer this action to the U.S. District Court for the Southern District of Florida, Miami Division.

Respectfully submitted,

MATTIONI, LTD.


Dated: August 19, 2002                    BY: _____

DANTE MATTIONI, ESQUIRE
PAUL A. KETTUNEN, ESQUIRE
399 Market Street, Second Floor
Philadelphia, PA 19106
(215)629-1600
Attorneys for Defendant
Carnival Cruise Lines